**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)**

| | | |
|---|---|---|
| ELIZABETH FLANIGAN<br>250 Kinsman Ct.<br>Cincinnati, OH 45238 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | |
| DHL EXPRESS (USA), INC.<br>c/o CT Corp. System (Statutory Agent)<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219 | )<br>)<br>)<br>)<br>) | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| **Serve Also:** | )<br>) | **JURY DEMAND ENDORSED HEREIN** |
| DHL EXPRESS (USA), INC.<br>236 Wendell H Ford Blvd.<br>Erlander, KY 41018 | )<br>)<br>) | |
| -and- | ) | |
| DHL EXPRESS (USA), INC.<br>1210 South Pine Island Rd.<br>1st Fl. Legal Dept.<br>Plantation, FL 33324 | )<br>)<br>)<br>) | |
| Defendant. | )<br>) | |

Plaintiff Elizabeth Flanigan by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

**PARTIES**

1. Flanigan is a resident of the city of Cincinnati, Hamilton County, Ohio.

2. Defendant DHL EXPRESS (USA), INC. ("DHL") is an Ohio-incorporated, for-profit company that conducts business throughout the state of Ohio and others. The relevant

location of the events and omissions of this Complaint took place was 236 Wendell H Ford Boulevard, Erlanger, Kentucky, 41018.

3. DHL is, and was at all times hereinafter mentioned, Flanigan's employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e and R.C. § 4112 *et seq*.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in in that Flanigan is alleging federal law claims under Title VII.

5. This Court has supplemental jurisdiction over Flanigan's state law claims pursuant to 28 U.S.C. § 1367, as Flanigan's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

7. Within 300 Days of the adverse employment actions described herein, Flanigan filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2021-00412 ("EEOC Charge").

8. On July 14, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Flanigan regarding the EEOC Charge.

9. Flanigan received the Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which had been attached hereto as Plaintiff's Exhibit 1.

10. Flanigan filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.

11. Flanigan has properly exhausted all administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## **FACTS**

12. Flanigan is a former employee of DHL.

13. At all times noted herein, Flanigan was qualified for her position with DHL.

14. At all times noted herein, Flanigan could fully perform the essential functions of her job, with or without a reasonable accommodation.

15. Flanigan is female, placing her in a protected class for her gender/sex.

16. Flanigan worked for DHL as an International Specialist (FT-tug) from June 17, 2020, until DHL wrongfully terminated Flanigan's employment on or about July 10, 2020.

17. After Flanigan's first few weeks of training and orientation, she was placed at the DHL hub in Erlanger, Kentucky to receiving training for the tug position.

18. Notably, Flanigan was the only woman in her training group.

19. Flanigan asked her Supervisor Larry Smith about the training, and he assured Flanigan that her training would begin once another supervisor returned from vacation.

20. Flanigan never received that training, despite the fact that the rest of her all-male training group did.

21. Additionally, Flanigan experienced multiple instances of sexual harassment while working for DHL.

22. On her first shift, a forklift driver (name unknown, "NU"), approached Flanigan and asked if she knew the wife of another worker.

23. When Flanigan responded no, NU proceeded to say that he thought his coworker's wife was hot and that he wanted to "fuck her." This was Flanigan's first encounter with NU.

24. Disgusted, Flanigan walked away without responding.

25. On Flanigan's second shift, she was riding in a van with a few other workers, including Tent Worker Chris LNU.

26. Chris LNU asked the van driver whose "dick [he] suck[ed] to get that job."

27. Flanigan, who was sitting in front of Chris LNU, turned around and asked him to stop making comments like that because, as a woman, she found them offensive.

28. Chris LNU told Flanigan that he did not "give a fuck" what she thought of his comments.

29. During her third shift, a Tent Worker (name unknown, "NU2") struck up a conversation with Flanigan about his nieces and nephews and who they were dating.

30. When NU2 began sharing intimate, sensitive details about his family's sex lives, Flanigan interrupted him, said she did not want to hear about the topic, and walked away.

31. Flanigan went to her Manager, Ron LNU, and reported NU2's perverted comments. This was a protected complaint.

32. Instead of offering useful advice or investigating the situation, Ron LNU suggested that Flanigan "join in the perversion instead."

33. Flanigan felt creeped out and walked away.

34. After her conversation with Ron LNU, Flanigan went to HR and spoke with an HR Representative (name unknown, "NU3").

35. During this conversation, Flanigan reported all the instances detailed *supra*, describing them as unwelcome sexual harassment. This was another protected activity.

36. NU3 agreed with Flanigan that these instances were sexual harassment and said she would take care of these issues and follow up with more information.

37. Flanigan was then removed from the schedule pending the investigation.

38. After her meeting with NU3, Flanigan went home.

39. Flanigan also reported the instances described *supra* to General Supervisor Paul Brinkman. These were additional protected complaints.

40. Brinkman acknowledged Flanigan's complaints and ensured her that he too would initiate an investigation.

41. Over the next few days, Flanigan followed up with NU3 multiple times, asking for updates on the investigation and her return-to-work date. Flanigan never received a response.

42. Flanigan also followed up by calling Brinkman and the DHL HR Department multiple times just trying to reach anyone, and still got no response.

43. The lack of response from anyone at DHL coupled with Flanigan being taken off the work schedule entirely led her to assume that her employment had been terminated.

44. It is therefore clear that DHL terminated Flanigan's employment in retaliation for her complaints of sexual harassment.

45. DHL's removal of Flanigan from the schedule (i.e. her termination) was an adverse employment action against her.

46. DHL's purported reason for Flanigan's termination (or lack thereof) was pretext.

47. DHL actually terminated Flanigan's employment because of her sex/gender, and/or in retaliation against her protected complaints.

48. As a result of the above, Flanigan has suffered and will continue to suffer damages.

**COUNT I: GENDER/SEX DISCRIMINATION IN VIOLATION OF R.C. §4112,** ***et seq.***

49. Flanigan restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

50. Flanigan is female, and therefore is a member of a protected class based on her gender.

51. DHL treated Flanigan differently than other similarly situated employees based on her gender/sex.

52. DHL discriminated against Flanigan on the basis of her gender/sex throughout her employment with DHL.

53. DHL discriminated against Flanigan on the basis of her gender/sex when it trained all her male coworkers for the tug position but refused to train her.

54. DHL discriminated against Flanigan on the basis of her gender/sex when it failed to adequately address her multiple complaints of sexual harassment in the workplace.

55. DHL's termination of Flanigan's employment was an adverse employment action against her.

56. DHL's purported reason for Flanigan's termination (or lack thereof) was pretext.

57. DHL actually terminated Flanigan's employment because of her sex/gender. DHL's discrimination against and termination of Flanigan based on her gender/sex violated R.C. § 4112 *et seq.*

58. As a direct and proximate result of DHL's conduct, Flanigan has suffered and will continue to suffer damages.

**COUNT II: GENDER/SEX DISCRIMINATION IN VIOLATION OF TITLE VII**

59. Flanigan restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

60. Flanigan is female, and therefore is a member of a protected class based on her gender.

61. DHL treated Flanigan differently than other similarly situated employees based on her gender/sex.

62. DHL discriminated against Flanigan on the basis of her gender/sex throughout her employment with DHL.

63. DHL discriminated against Flanigan on the basis of her gender/sex when it trained all her male coworkers for the tug position but refused to train her.

64. DHL discriminated against Flanigan on the basis of her gender/sex when it failed to adequately address her multiple complaints of sexual harassment in the workplace.

65. DHL's termination of Flanigan's employment was an adverse employment action against her.

66. DHL's purported reason for Flanigan's termination (or lack thereof) was pretext.

67. DHL actually terminated Flanigan's employment because of her sex/gender.

68. DHL's discrimination against and termination of Flanigan based on her gender/sex violated Title VII.

69. As a direct and proximate result of DHL's conduct, Flanigan has suffered and will continue to suffer damages.

## COUNT III: SEXUAL HARASSMENT

70. Flanigan restates each and every prior paragraph of this complaint, as if it were fully restated herein.

71. Flanigan was subjected to unwelcome sexual harassment in the form of inappropriate comments from her previous coworkers at DHL.

72. Therefore, DHL created and sustained an environment of severe, pervasive, and unwelcome sexual harassment in the form of inappropriate comments.

73. As a direct and proximate result of the intimidating, offensive, and hostile environment created and sustained by DHL, Flanigan reported the sexual harassment to Ron LNU, Brinkman, and the HR Department.

74. When Flanigan complained of the sexual harassment to Manager Ron LNU, he suggested that she play along with the perverted commentary.

75. Further, after Flanigan complained of the sexual harassment to HR and Brinkman, she was ensured a proper investigation but never received any follow up information.

76. DHL, by and through its Management and HR Department, had knowledge of the sexual harassment Flanigan was experiencing yet failed to adequately address the complaints or take any corrective or remedial action.

77. As a direct and proximate result of DHL's conduct, Flanigan has suffered and will continue to suffer damages.

## COUNT IV: RETALIATION

78. Flanigan restates each and every prior paragraph of this complaint, as if it were fully restated herein.

79. As a result of DHL's discriminatory conduct describe *supra*, Flanigan complained of the sexual harassment she was experiencing.

80. Subsequent to Flanigan's complaints to HR and DHL Management, she stopped receiving any communication from DHL, she never received any follow up information regarding her complaints, and she was taken off the work schedule entirely, effectively terminating her employment.

81. DHL's actions were retaliatory in nature based on Flanigan's opposition to the unlawful discriminatory conduct.

82. Pursuant to R.C. §4112 *et seq*. and Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

83. DHL's termination of Flanigan's employment was an adverse employment action against her.

84. DHL's purported reason for Flanigan's termination (or lack thereof) was pretext.

85. DHL actually terminated Flanigan's employment because of her sex/gender.

86. As a direct and proximate result of DHL's retaliatory discrimination against and discharge of Flanigan, she has suffered and will continue to suffer damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Flanigan demands from Defendant the following:

a) Issue a permanent injunction:

    i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

    ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

    iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    v.    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge Flanigan's personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Flanigan for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Flanigan's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

   /s/ Evan R. McFarland
Evan R. McFarland (0096953)
Matthew G. Bruce (0083769)
      Trial Attorney
Brianna R. Carden (0097961)
**THE SPITZ LAW FIRM, LLC**
11260 Chester Rd, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:    (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com
Email: Brianna.Carden@SpitzLawFirm.com

*Attorneys for Plaintiff Elizabeth Flanigan*

## JURY DEMAND

Plaintiff ELIZABETH FLANIGAN demands a trial by jury by the maximum number of jurors permitted.

   /s/ Evan R. McFarland
Evan R. McFarland (0096953)

11